

**NUMBER 13-06-00649-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI - EDINBURG**

---

**JOEL MOLANO,**                                                                 **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

**On appeal from the 92nd District Court
of Hidalgo County, Texas.**

---

# O P I N I O N

**Before Justices Rodriguez, Garza, and Vela
Opinion by Justice Rodriguez**

Appellee, the State of Texas, acting through the Consumer Protection and Public Health Division of the Attorney General's Office (the State or Attorney General), sued appellant, Joel Molano, for the unauthorized practice of law and violations of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA) and chapter 406 of the Texas

Government Code.  *See* TEX. BUS. & COM. CODE ANN. § 17.47 (Vernon Supp. 2008); TEX.

GOV'T CODE ANN. § 406.016(d) (Vernon 2005) ("A notary public not licensed to practice law

in this state may not give legal advice or accept fees for legal advice.").  The trial court

rendered judgment for the State, ordering permanent injunctive relief and awarding a

monetary judgment against Molano.  By three issues, Molano contends that the trial court

abused its discretion in denying his motion to abate and that the trial court erred in its

interpretation of the DTPA when it awarded civil penalties, restitution, and attorney's fees

in the absence of a violation of injunctive relief.  We affirm.

## I.  Background

The State brought the underlying lawsuit seeking injunctive relief and praying for civil

penalties in the amount of $20,000 per DTPA violation, restitution to consumers of money

or property acquired by means of Molano's acts or practices, *see* TEX. BUS. & COM. CODE

ANN. § 17.47 (Vernon Supp.2008), and reasonable attorney's fees and court costs.  *See*

TEX. GOV'T CODE ANN. § 406.006(c) (Vernon 2005).  Molano filed a motion to abate alleging

that "[the State] has failed to follow the prerequisites of a class action lawsuit contained in

Rule 42 of the Texas Rules of Civil Procedure" and praying that the trial court abate the

underlying proceeding "until [the State] follows the requirements set out in the class action

provision contained in Rule 42."  *See* TEX. R. CIV. P.  42.  The trial court, after hearing

Molano's motion to abate and considering the arguments of counsel, denied the motion.

Following a bench trial, the trial court signed a final judgment ordering permanent

injunctive relief and awarding the following:

> that . . . [the] State . . . have and recover from . . . Molano $10,000.00 as
> restitution to consumers of money acquired by means of false, misleading,
> or deceptive acts or practices of defendant; $10,000.00 as a civil penalty to

2

the State . . . for false, misleading, or deceptive acts or practices committed by [Molano]; and $15,000.00 as reasonable and necessary attorney's fees to the State . . . .

The trial court filed findings of fact and conclusions of law,[1] and this appeal ensued.

_____

[1]The trial court made the following pertinent findings of fact:

1.      On or after January 1, 2005, to May 4, 2006, [Molano] engaged in the business of giving advice or rendering a service requiring the use of legal skill and knowledge in:

      a.      interviewing persons and advising them as to whether or not to file a petition or application for divorce under state law or for immigration benefits under federal law;

      b.      drafting and preparing pleadings or documents for others in judicial or administrative proceedings relating to divorce actions or immigration to the United States;

      c.      Drafting and preparing wills, contracts, agreements, powers of attorney, and affidavits for others;

      d.      selecting and completing legal forms or instruments for others in divorce actions and proceedings relating to immigration to the United States; and/or

      e.      preparing legal instruments affecting title to real property, such as deeds and deeds of trust;

2.      In the conduct of business, [Molano] advertised, offered for sale, and/or sold his services to consumers of this State. At least 200 persons acquired by purchase defendant's services, and the sale transaction with each person constitutes an unlawful act or practice and a separate violation of the Texas Deceptive Trade Practices - Consumer Protection Act, TEX. BUS. & COM. CODE ANN. § 17.41, *et seq.*;

3.      On or after January 1, 2005, to May 4, 2006, [Molano] solicited, charged, and received compensation, totaling $10,000.00, from consumers for giving advice and for rendering the services enumerated in paragraph 1 above; and,

. . . .

6.      Attorney for [the State] spent 150 hours working on this case that were necessary for the proper representation of the State, and the usual and customary rate charged by practicing attorneys of his level of experience in Hidalgo County is $150.00 per hour.

The pertinent part of the trial court's conclusions of law are the following:

14.      [Molano] acquired $10,000.00, by means of his unlawful acts and practices, from consumers who are entitled to restitution;

15.      Justice requires the imposition of a civil penalty in the amount of $10,000.00 for the violations of law committed by [Molano];

3

II.  Motion to Abate

By his first issue, Molano contends that the trial court erred in denying his plea in abatement because the State failed to comply with all requirements for class certification and notification under rule 42 of the Texas Rules of Civil Procedure.  *See id.*  Molano argues that by denying his plea the trial court forced him to proceed to trial on the merits in violation of his due process rights and without his having an opportunity to defend himself against potential claimants, to know what each claimant was alleging.

A.  Standard of Review and Applicable Law

A motion to abate is used to challenge the plaintiff's pleadings by which the defendant identifies a defect and asks the trial court to keep the suit from going forward until plaintiff corrects the defect.  *Martin v. Dosohs I, Ltd.*, 2 S.W.3d 350, 354 (Tex. App.–San Antonio 1999, pet. denied); *see Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 805 (Tex. 2001).  As this Court has said, "[a] plea in abatement should not only show the grounds upon which the suit is improperly brought, but should also show how it should have been brought, and should always state facts, not conclusions of law."  *Bryce v. Corpus Christi Area Convention & Tourist Bureau*, 569 S.W.2d 496, 499 (Tex. Civ. App.–Corpus Christi 1978, writ ref'd n.r.e.) (op. on reh'g).  Whether to abate an action is a matter within the trial court's sound discretion.  *Dolenz v. Cont'l Nat'l Bank*, 620 S.W.2d 572, 575 (Tex. 1981); *Dahl v. Hartmen*, 14 S.W.3d 434, 436 (Tex. App.–Houston [14th Dist.] 2000, pet. denied).  On appeal, the trial court's decision on a motion to abate is

16.     A reasonable fee for the necessary services of the State's attorney of record in this case is $15,000.00; and,

17.     As a result of the conclusions of law (numbers 14, 15, and 16), [Molano] is indebted to [the State] for the sum of $35,000.00.

4

reviewed under an abuse of discretion standard.  *Dolenz*, 620 S.W.2d at 575; *Dahl*, 14 S.W.3d at 436.

## B.  Analysis

### 1.  The Law

Section 17.46(a) of the DTPA provides, in relevant part, as follows:

> False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division [of the Attorney General's office] under section 17.47 . . . of this code.

TEX. BUS. & COM. CODE ANN. §17.46(a) (Vernon Supp. 2008); *Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 471 (Tex. App.–Austin 1994, writ denied) ("Under this provision, the attorney general may bring an action in the public interest against an entity it believes is engaged in conduct prohibited by the DTPA.").  The DTPA, by its own terms, authorizes the Attorney General to bring an action for injunctive relief whenever the consumer protection division has "reason to believe" unlawful trade practices are occurring. TEX. BUS. & COM. CODE ANN. §17.47(a) (Vernon Supp. 2008).  Section 17.47(a) specifically provides for the following injunctive relief:

> Whenever the consumer protection division [of the Attorney General's office] has reason to believe that any person is engaging in, has engaged in, or is about to engage in any act or practice declared to be unlawful by this subchapter, and that proceedings would be in the public interest, the division may bring an action in the name of the state against the person to restrain by temporary restraining order, temporary injunction, or permanent injunction the use of such method, act, or practice.

*Id.*; *see id.* § 17.47(b) (Vernon Supp. 2008) (explaining that the "court may issue temporary or permanent injunctions to restrain and prevent violations of this subchapter . . . .").  The DTPA also authorizes civil penalties to punish violators for their unlawful conduct; penalties

5

which are to be paid to the State. *See* TEX. BUS. & COM. CODE ANN. § 17.47(c) (Vernon Supp. 2008). In addition to the primary remedies of injunctive relief and civil penalties, the court may order restitution on behalf of consumers. *See id.* § 17.47(d) (providing that a "court may make such additional orders or judgment as are necessary . . . to restore money or property").

Molano does not challenge the State's authority to bring an action for relief under the DTPA when it believes unlawful trade practices are occurring. Molano does, however, challenge the State's authority to bring such an action without following the rules of civil procedure as they relate to the filing of class action cases, specifically class certification and notification. *See* TEX. R. CIV. P. 42. Appellant argues that because other litigants are required to follow class-action rules, so should the State. We disagree.

### 2. Standing as a Class Representative

In class actions, the proposed plaintiff must be a member of the class which he claims to represent. *See id.* at 42(a) ("One or more members of a class may sue or be sued as representative parties . . . ."). The Seventh Circuit has held that a state's attorney does not have standing to bring a class action because he is not a member of the class which he purports to represent, as required by federal law.[2] *Ex rel. Bowman v. Home Fed. Sav. & Loan*, 521 F.2d 704, 707 (7th Cir. 1975); *see* FED. R. CIV. P. 23(a) (providing that "one or more members of a class may sue or be sued as representative parties").

---

[2]"Class actions are governed by rule 42 of the Texas Rules of Civil Procedure, rewritten in 1977 to mirror the class action provisions of the Federal Rules of Civil Procedure." *Bara v. Major Funding Corp.*, 876 S.W.2d 469, 472-73 (Tex. App.–Austin 1994, writ denied) (citing TEX. R. CIV. P. 42; THOMAS MCELROY, CIVIL PRETRIAL PROCEDURE § 618 (West 1980 & Supp. 1992)). Federal case law interpreting federal rule 23 may be relied on by Texas courts in construing similar language found in rule 42 where there are no Texas cases interpreting the issue. *See Glassell v. Ellis*, 956 S.W.2d 676, 682 (Tex. App.–Texarkana 1997, writ dism'd w.o.j.).

In the present case, the Attorney General sued Molano for the unlawful services he offered for sale to, sold to, or performed for consumers. The Attorney General did not allege in his petition that either he or the State purchased Molano's services. The Attorney General did not purport to sue as a representative of the class of persons who purchased Molano's services. Under the facts of this case, neither the Attorney General nor the State is a member of the purported class and could not have brought a class action lawsuit on behalf of private consumers under rule 42. *See* TEX. R. CIV. P. 42. To hold that the language of section 17.47(d) confers standing to the Attorney General to bring a class action would be reading something into the provision that is simply not there.

### 3. Authorization by Statute

We note, however, that the State may bring a class action if it is authorized to do so under state statute. For example, the express language of the Texas Insurance Code authorizes the Attorney General to bring a class action. *See* TEX. INS. CODE ANN. § 541.251 (Vernon Supp. 2008). Section 541.251(a) of the insurance code provides that if "a member of the insurance buying public has been damaged" by unlawful practices, the Department of Insurance "may request the attorney general to bring a class action." *Id.* § 541.251(a). In holding that the prerequisites for class actions must be applied to damage claims asserted by the Attorney General under the insurance code, the Texas Supreme Court observed, "[t]he Legislature could have structured this remedy in various ways, but when it authorized attorneys general to bring a 'class action,' we presume it meant what the [Insurance] Code says." *Farmers Group, Inc., v. Lubin*, 222 S.W.3d 417, 426 (Tex. 2007). The DTPA, unlike the insurance code, does not provide for the use of class actions by the Attorney General.

7

4. De Facto Class Action

Nonetheless, even in the absence of standing and express statutory authority, Molano contends that cases filed by the Attorney General under section 17.47 on behalf of a specified group of individuals must be filed as class actions because such suits qualify as de facto[3] class actions. In support of his argument, Molano relies on *Bara*, 876 S.W.2d at 472-73, and *Thomas v. State*, 226 S.W.3d 697, 707 (Tex. App.–Corpus Christi 2007, pet. dism'd). While the courts in *Bara* and *Thomas* characterize suits filed by the Attorney General under section 17.47 as de facto class actions, this characterization neither transforms the nature of a DTPA action nor authorizes the Attorney General to sue on behalf of private individuals.

In *Bara*, a case of first impression, the Austin Court of Appeals addressed the issue of "whether an action brought by the attorney general pursuant to DTPA section 17.47 in response to consumer complaints tolls the running of the statutes of limitations on the consumers' individual claims." *Bara*, 876 S.W.2d at 471. Acknowledging that "[t]he interests presented . . . are closely akin to the interests presented in class action litigation," and after examining "the body of law governing class actions" as it related to "the running of the statute of limitations for all members of the class," the *Bara* court concluded that:

> in situations in which the attorney general files suit under section 17.47 of the DTPA on behalf of a specified group of individuals, that suit qualifies as a *de facto* class action and the statute of limitations is tolled during the period in which the individuals are participants in the attorney general's suit.

---

[3]Black's Law Dictionary defines "de facto" as "[a]ctual; existing in fact; having effect even though not formally or legally recognized." BLACK'S LAW DICTIONARY 353 (8th ed. 2005).

See id. 471-73. Thus, the Baras, who rejected the settlement offer in the attorney general's DTPA action and filed their own lawsuit, were permitted to rely on class action tolling principles. *See id*.

In *Thomas*, this Court considered whether the trial court violated section 17.47(d) because it ordered restitution to "consumers" without specifying the identifiable persons entitled to restitution and the amount of money to be paid to each.[4] *See* 226 S.W.3d at 705. Agreeing with the State that actions filed by the attorney general under section 17.47 qualify as de facto class actions, we concluded that "the plain language of section 17.47(d) authorizes the trial court to order the restoration of money or property acquired by unlawful means, without any requirement that the trial court specify "identifiable persons" or the amount of money to be paid to each consumer." *Id.* at 707; *see Avila v. State*, 252 S.W.3d 632, 646 (Tex. App.–Tyler 2008, no pet.) (agreeing that actions filed by the Attorney General's office pursuant to section 17.47 are de facto class actions, the court concluded that the members of the class may be identified by the State's exhibits offered at trial). *Thomas* is inapposite to Molano's argument that the State should be required, at the inception of the lawsuit, to follow the classification and notification procedures of rule 42. Having concluded, in *Thomas,* that the trial court need not specify "identifiable persons" or the amount of money to be paid to each consumer, we will not now conclude that the State must follow rule 42 procedures when filing suit for violation of the DTPA. *See* TEX. R. APP. P. Molano's reliance on *Thomas* is misplaced. The Attorney General sought

---

[4]We also considered whether the judgment violated section 17.47(d) because it ordered restitution in an amount that included monies paid to the Thomases beyond a point two years prior to the filing of the lawsuit and concluded that the two-year limitations period applied only to the award of actual damages and not to restitution. *Thomas v. State*, 226 S.W.3d 697, 705, 708 (Tex. App.–Corpus Christi 2007, pet. dism'd).

restitution of monies acquired by means of the alleged unlawful acts in the underlying case. Molano provides no other authority, and we find none, to support his contention that the exercise of this power converts the State's lawsuit into a rule 42 class action.

### 5. Efficient and Economical Procedures to Secure Protection

Furthermore, section 17.44(a) provides the following rule of construction for the courts:

> [The DTPA] shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, . . . and to provide efficient and economical procedures to secure such protection.

TEX. BUS. & COM. CODE ANN. § 17.44(a) (Vernon 2002). As the State urges, to hold that a request for restitution by the Attorney General perforce converts the DTPA action into a class action would impede its efficient and economical procedure to secure the protection of consumers from deceptive business practices. Requiring actions brought by the Attorney General under the DTPA to meet the class certification and notice requirements would impact their efficiency and economy of those actions.

Therefore, we conclude that this DTPA action against Molano was properly brought. The trial court correctly exercised its discretion by denying Molano's motion to abate. We overrule Molano's first issue.

### III. Assessment of Civil Penalties, Restitution, and Attorney's Fees

By issues two and three, Molano contends that the trial court erred in its interpretation of section 17.47 when it awarded a monetary judgment against him. Molano asserts that the statute's provision for an award of civil penalties, restitution, and attorney's fees applies only to violations of restraining orders, and because there is no evidence of

10

a prior temporary or permanent injunction, the trial court's assessment of civil penalties, restitution, and attorney's fees should be set aside as a matter of law.  We disagree.

## A.  Applicable Law and Standard of Review

In construing a statute, the primary objective is to determine and give effect to the Legislature's intent.  *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003).  The starting point for review is with the "plain and common meaning of the statute's words."  *Id.*; *see* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005).  It is a question of law for the court to decide whether a particular remedy is available under a statute.  *Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 280 (Tex. 1999) (per curiam) (citing *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989) (per curiam) (providing that statutory construction is a question of law)).  Because the interpretation of statutes is a question of law, the standard of review is de novo.  *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002).

## B.  Analysis

### 1.  Civil Penalties

The pertinent language of section 17.47(c) provides the following:

> In addition to the request for a temporary restraining order, or permanent injunction in a proceeding brought under Subsection (1) of this section, the consumer protection division may request, and the trier of fact may award, a civil penalty to be paid to the state in an amount of:
>
> (1) not more than $20,000 per violation . . . .

TEX. BUS. & COM. CODE ANN. § 17.47(c) (Vernon Supp. 2008).  Section 17.47(e) sets out that "[a]ny person who violates the terms of an injunction under this section shall forfeit and pay to the state a civil penalty of not more than $10,000 per violation, not to exceed

$50,000." *Id*. § 17.47(e) (Vernon Supp. 2008). The State concedes that section 17.47(e) applies in circumstances in which the State seeks a civil penalty for a violation of an injunction. However, the trial court's award of civil penalties, in this case, was based on section 17.47(c), not section 17.47(e).

The trial court found in its second finding of fact that at least 200 persons purchased Molano's services and that each sale transaction constituted an unlawful act or practice and a separate violation of the DTPA. It also concluded in its fifteenth conclusion of law that "[j]ustice requires the imposition of a civil penalty in the amount of $10,000.00 for the violations of law committed by [Molano]." It is apparent that the trial court's reference to "law" is to section 17.47(c) of the DTPA and the "violations" refer to the DTPA violations stated in its finding. The trial court makes no reference to an award of civil penalties for the violation of an injunction. We find nothing in the trial court's findings or conclusions or in the final judgment that substantiates Molano's premise that the trial court must have imposed civil penalties pursuant to section 17.47(e). Thus, we conclude that the trial court's award of civil penalties for violations of the DTPA was consistent with, and authorized under, section 17.47(c). *Id*. § 17.47(c) (Vernon Supp. 2008).

## 2. Restitution

The pertinent language of section 17.47(d), on which the trial court relied in awarding restitution, provides that "[t]he court may make such additional orders or judgments as are necessary . . . to restore money or property, real or personal, which may have been acquired by means of any unlawful act or practice." *Id.* § 17.47(d) (Vernon Supp. 2008). The legislative grant of judicial authority to restore money acquired by unlawful means is the basis for the trial court's award of restitution as framed in its final

12

judgment. Read in context, the provision has no language or words that would condition the availability of the restitution remedy upon a violation of an injunction, as Molano contends. Rather, the provision is clear that the trial court is authorized to award restitution of money "which may have been acquired by means of any unlawful act or practice." In its findings of fact and conclusions of law, the trial court made the necessary finding and conclusion to support that it acted within the grant of authority conferred by section 17.47(d). *See id.* The trial court's third finding of fact provides that Molano "solicited, charged, and received compensation, totaling $10,000.00, from consumers for giving advice and for rendering the services," and the court's fourteenth conclusion of law sets out that Molano "acquired $10,000.00, by means of his unlawful acts and practices, from consumers who are entitled to restitution." Contrary to Molano's contention, section 17.47(d) does not require a violation of an injunction before the trial court may award restitution.

### 3. Attorney's Fees

In addition, the State prayed for, and the trial court granted, attorney's fees under the Texas Government Code. Section 402.006(c) provides the following: "In a case in which the state is entitled to recover a penalty or damages the attorney general is entitled, on behalf of the state, to reasonable attorney's fees and court costs." TEX. GOV'T CODE ANN. § 406.006(c) (Vernon 2005); *see State v. Triax Oil & Gas, Inc.*, 966 S.W.2d 123, 127 (Tex. App.–Austin 1998, no writ); *see also Merchants Fast Motor Lines v. State*, 917 S.W.2d 518, 524 (Tex. App.–Waco 1996, writ denied) (concluding that the State is also entitled to the recovery of attorney's fees when it recovers penalty or tort damages). The State recovered a civil penalty of $10,000 from Molano. Thus, the award of attorney's fees

was within the authority granted to the trial court by section 402.006(c) of the government code and was proper. *See* TEX. GOV'T CODE ANN. § 406.006(c) (Vernon 2005).

In summary, the plain and clear language of section 17.47 of the DTPA and section 402.006 of the government code expressly authorizes the remedies awarded by the trial court in this action. *See McIntyre*, 109 S.W.3d at 745; TEX. BUS. & COM. CODE ANN. § 17.47 (Vernon Supp. 2008); TEX. GOV'T CODE ANN. §§ 311.011(a), 402.006 (Vernon 2005). We conclude that the trial court did not err in awarding remedies available under the statute in this case, including civil penalties, restitution, and attorney's fees, without a finding that Molano violated an injunction. *See Wal-Mart Stores*, 997 S.W.2d at 280. We overrule Molano's second and third issues.

## IV. Conclusion

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Opinion delivered and filed this
28th day of August, 2008.

14